IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERTA COPP,

        Plaintiff,

v.                                              Case No. 6:14-cv-01389-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Roberta Copp seeks review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act.

**I. Factual and Procedural Background**

On September 2, 2011, plaintiff filed an application for disability insurance benefits under the Act. She alleged a disability onset date of August 27, 2011.[1] After her claim was denied initially and then upon reconsideration, she requested a hearing before an Administrative Law Judge (ALJ). On March 28, 2013, an evidentiary hearing was held in Topeka, Kansas, before ALJ Robert J. Burbank. Plaintiff testified at the hearing, as did vocational expert (VE) Alissa Smith.

---

[1] A prior application for benefits by plaintiff was denied on August 26, 2011. Plaintiff did not appeal that ruling. The ALJ found no basis to reopen the prior application and concluded that the August 26, 2011 ruling was final, meaning plaintiff's current claim for benefits is limited to the period after that date. Plaintiff does not challenge that aspect of the ALJ's ruling.

The ALJ issued a written opinion denying benefits on April 25, 2013. Following the five step analysis called for by the regulations, the ALJ first found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, he found that plaintiff suffered from the following severe impairments: thyroid disorder, hyperlipidemia, migraine headaches, obesity, status post-left knee surgery, degenerative disc disease, and depression. At step three, the ALJ found that none of the impairments, alone or in combination, met or medically equaled the severity of the impairments listed in the regulations.

Next, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform sedentary work (frequently lifting 10 pounds; walk and stand up to 2 hours out of an 8 hour day; and sitting for 6 hours of an 8 hour day), except that she can only lift 20 pounds occasionally. The ALJ found that plaintiff cannot climb ladders, ropes or scaffolds but can occasionally climb, balance, stoop, kneel, crouch and crawl. Additional limitations included avoiding concentrated exposure to noise, moderate exposure to vibrations, and any exposure to hazardous conditions, as well as a limitation to work that involves understanding, remembering and carrying out simple instructions.

At step four, the ALJ found that plaintiff could not perform her past relevant work as a corrections officer or assistant retail manager. Finally, at step five, the ALJ found that based on plaintiff's characteristics and RFC, she could perform jobs that exist in significant numbers in the national economy, including pharmaceutical processor, printed circuit board screener, and toy stuffer. As such, the ALJ found that plaintiff was not entitled to benefits under the Act. The Appeals Council denied plaintiff's request for

review of the ALJ's ruling, making the ALJ's ruling the final decision of the Commissioner.

Plaintiff argues that the ALJ did not provide a proper RFC in that he failed to weigh all the medical opinions in the record, he did not properly evaluate the opinion of a treating therapist, and he failed to properly assess plaintiff's credibility. Dkt. 11.

## II.  Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue,* 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least

twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); see also 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite

limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III. Analysis

1. *Whether the ALJ erred in his determination of plaintiff's mental RFC*.

Plaintiff first argues that in determining plaintiff's mental RFC, the ALJ erred in his consideration of the opinion of licensed clinical social worker Brenda Lewis. Dkt. 11 at 13. Lewis issued a medical source statement on March 13, 2013, stating (among other things) that plaintiff had marked limitations in her ability to maintain attention and concentration for extended periods, in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms, and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. 10 at 647-48. The ALJ gave Lewis's opinion very little weight. Dkt. 10 at 25. Plaintiff contends the ALJ failed to consider the factors in SSR 06-03p in

evaluating Lewis's opinion and relied upon improper or unsupported factors in discounting the opinion.

As a licensed clinical social worker, Lewis was not an "acceptable medical source" under the regulations. *See* 20 C.F.R. §404.1513 (listing acceptable medical sources). She would be considered an "other source" whose opinion cannot be used to establish the existence of a medically determinable impairment but which can be used to show the severity of an otherwise-established impairment. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006). The same factors that govern consideration of acceptable medical sources can be considered in evaluating other medical sources, including how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty related to the individual's impairment; and any other facts that tend to support or refute the opinion. *Id*. at *4-5. "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id*. at *5.

In deciding to give Lewis's opinion very little weight, the ALJ considered appropriate factors, including how consistent the opinion was with other evidence, the degree to which it was supported by relevant evidence, and how well the opinion was explained. As the ALJ pointed out (Dkt. 10 at 25), there were numerous indications in Lewis's treatment notes of plaintiff's ability to sustain concentration. *See e.g.*, Dkt. 10 at 623-40 (notes indicating plaintiff able to focus on relevant topic). Clearly, the

6

consideration of how consistent the notes were with Lewis's opinions was proper. *Cf. Barnhill-Stemley v. Colvin*, 607 Fed.Appx. 811, 814-15, (discrepancies between physician's very restrictive assessment and contemporaneous treatment notes are a legitimate factor for discounting a medical opinion). The ALJ also accurately pointed out that the treatment notes failed to corroborate the other limitations found by Lewis. Plaintiff complains that this erroneously requires a source to specifically address every limitation in his or her in treatment notes, Dkt. 11 at 15, but again, the ALJ did nothing more than consider whether Lewis's opinions were consistent with other evidence. (For example, elsewhere in his opinion the ALJ noted evidence of plaintiff's ability to interact socially, such as by hosting a family event, going to a movie with a friend, and regularly visiting the YMCA and a library). Finally, the ALJ properly considered the fact that there was no explanation for the limitations indicated by Lewis and no apparent examinations or clinical findings to support them.

Plaintiff argues that Lewis's opinion was supported by nurse practitioner Yvonne Darr. The ALJ gave very little weight to Darr's opinions set forth in a March 5, 2013 Medical Source Statement (MSS). As the ALJ noted, under the regulations Darr was not an acceptable medical source and she was not a treating source, as she had only seen plaintiff two times before issuing the MSS. On the MSS form Darr checked boxes indicating that plaintiff was "extremely limited" in nearly all possible subcategories of sustained concentration, social interaction and adaptation (Dkt. 10 at 576-77). The ALJ accurately pointed out that Darr's treatment notes were not supportive of such extreme limitations. Dkt. 10 at 26. The ALJ also concluded that Darr failed to set forth any

7

factual basis for her opinion and that the extreme limitations were inconsistent with other records. These were all appropriate bases upon which to evaluate the opinions. The court finds no error in the ALJ's consideration of the opinions of either Lewis or Darr.

Plaintiff next challenges the ALJ's decision to assign significant weight to the opinions of consulting examiner George Huff, Ph.D., and reviewing consultants Robert Blum, Ph.D. and R.E. Schulman, Ph.D. Plaintiff argues the opinions of these sources do not support the mental RFC determined by the ALJ. Dkt. 11 at 16-18. The court must reject this argument as contrary to the record and the applicable standard of review. Hough opined that plaintiff was capable of understanding and remembering simple to intermediate instructions; capable of sustained concentration, persistence and pace in a work setting; and able to maintain appropriate social interactions. Dkt. 10 at 509. The ALJ found that Hough's opinions were consistent with his personal evaluations of plaintiff and with the medical evidence. Blum opined based on a review of the record that plaintiff did not have a severe mental impairment. Dkt. 10 at 517. Schulman opined in May 2012 that plaintiff's mental symptoms had worsened but that she was still able to understand, remember, use judgment, and make decisions concerning intermediate tasks and instructions; she was not significantly limited in the ability to complete a normal workday and workweek without interruptions from psychological symptoms and could perform at a consistent pace without unreasonable rest periods; and she could attend, concentrate, and maintain pace and persistence consistent with the

foregoing. Dkt. 10 at 91-92. The ALJ found that Blum's and Schulman's opinions were consistent with the evidence of record.

These opinions clearly had support in the record and plaintiff has not shown that they were improperly evaluated. Nor are they inconsistent in any respect with the RFC determined by the ALJ, which included a limitation to work that involves understanding, remembering and carrying out simple instructions.  The ALJ did not err in evaluating plaintiff's mental RFC and his findings are supported by substantial evidence.

    2. *Whether the ALJ erred in his determination of plaintiff's physical RFC*.

Plaintiff next contends the ALJ erred in his determination of plaintiff's physical RFC because "he did not weigh the opinion of physical therapist Carolyn Bloom." Dkt. 11 at 19.  Bloom opined in March 2010 that plaintiff would be capable of performing sedentary-light work but would have certain restrictions, including standing for four or five minutes and sitting 30 minutes at a time before requiring a posture change. Dkt. 10 at 424-25.

In his opinion, the ALJ noted that plaintiff's prior application for benefits was denied as of August 26, 2011, and that he was bound by the finding that plaintiff was not disabled as of that date. Dkt. 10 at 24. He then referred generally to the fact that "[t]he record contains other opinions regarding the claimant's functioning prior to the alleged onset date, which fall within a period of time previously adjudicated as described in the [ALJ] decision dated August 26, 2011." *Id*. Bloom's opinion, rendered in March 2010, was one such opinion. The ALJ then found that "these opinions are

9

unsupported by the objective evidence and would be entitled to very little weight." Dkt. 10 at 24. Although the ALJ proceeded to specifically mention two particular opinions by doctors issued before August 2011, and did not specifically address Bloom's opinion, the court concludes that this does not require a remand. A fair reading of the ALJ's opinion indicates that he in fact considered Bloom's opinion in this context and gave little weight to it on the grounds that it was unsupported by objective evidence.

> 3. *Whether the ALJ erred in evaluating plaintiff's credibility*.

Plaintiff's final argument is that the ALJ erred by improperly dismissing her reports of limitations from pain. Dkt. 11 at 22. She argues the ALJ improperly disregarded her complaints by relying on factors not supported by the evidence.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 F.3d at 1166-67 (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ must consider the entire case record, including the objective medical evidence to determine whether plaintiff's subjective claims of debilitating pain are credible. SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any prescribed treatment prescribed," regularity of contact with her doctor, possible

psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id*. (*citing Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186).

"Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice. *Oldham*, 509 F.3d at 1257-58. However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Dkt. 10 at 22. Among other things, the ALJ concluded that objective

11

clinical signs and findings indicated that plaintiff's symptoms were not disabling. For example, he noted reports showing that plaintiff's past left ankle fracture was well mineralized without apparent soft tissue abnormality. *Id*. An MRI showed only mild disc bulging and disc space narrowing in her lumbar spine, as well as mild facet joint disease. The ALJ extensively reviewed the medical evidence concerning plaintiff's musculoskeletal abnormalities before determining that this evidence failed to show that plaintiff would be unable to engage in work consistent with the RFC. Dkt. 10 at 22-24. Although plaintiff takes issue the ALJ's analysis, the consideration of such objective medical evidence in evaluating plaintiff's reports of pain was clearly appropriate. *See* 20 C.F.R. §404.1529(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of pain). The ALJ also considered evidence concerning plaintiff's daily activities. Again, this was clearly a proper consideration. 20 C.F.R. §404.1529(c)(3)(i). The ALJ noted that plaintiff's activities included swimming at the YMCA two times per week, reading, watching television, going to church and visiting with others. He noted plaintiff's testimony that she could, with some difficulty, engage in personal care and household tasks, bathe and dress, prepare simple meals, and complete cleaning tasks. Dkt. 10 at 22.

Plaintiff argues that the ALJ "relied too heavily" on the objective medical evidence and the evidence of plaintiff's activities of daily living. Dkt. 15 at 5. But these and the other factors relied on by the ALJ were properly considered. The ALJ's thorough opinion shows that he considered all of the evidence, not just the foregoing factors. In essence plaintiff is asking this court to reweigh the evidence, something it

12

cannot do. As indicated above, credibility determinations are the province of the ALJ and will not be overturned if supported by substantial evidence. The ALJ's determination of plaintiff's credibility – as well as his findings of plaintiff's RFC and her ability to perform certain sedentary jobs in the national economy – is supported by substantial evidence.

**IT IS THEREFORE ORDERED** this 16th day of November, 2015, that the Commissioner's final decision denying plaintiff's application for disability insurance benefits is AFFIRMED.

____s/ J. Thomas Marten____
J. THOMAS MARTEN, Judge
